WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Carrasco Gamez, Jr.,<br>　　　　　Plaintiff,<br>　vs.<br>Charles L. Ryan, et al.,<br>　　　　　Defendants. | No.   CV 13-1757-PHX-RCB (MEA)<br><br>**O R D E R** |

Plaintiff Robert Carrasco Gamez, Jr., who is confined in the Arizona State Prison Complex, Browning Unit in Florence, Arizona, filed a *pro se* civil rights Complaint under 42 U.S.C. § 1983 and an Application to Proceed *In Forma Pauperis*.  (Doc. 1, 2.) Plaintiff later filed a motion for recusal of Magistrate Judge Aspey and a motion for appointment of counsel.  (Doc. 7, 8.)  The Court will dismiss the Complaint with leave to amend and deny the motions.

**I.**　**Application to Proceed *In Forma Pauperis* and Filing Fee**

Plaintiff's Application to Proceed *In Forma Pauperis* will be granted.  28 U.S.C. § 1915(a).  Plaintiff must pay the statutory filing fee of $350.00.  28 U.S.C. § 1915(b)(1). The Court will not assess an initial partial filing fee.  *Id.*  The statutory filing fee will be collected monthly in payments of 20% of the previous month's income each time the amount in the account exceeds $10.00.  28 U.S.C. § 1915(b)(2).  The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula.

**JDDL-K**

**II.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*)).

If the Court determines that a pleading could be cured by the allegation of other facts, a *pro se* litigant is entitled to an opportunity to amend a complaint before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (*en banc*). The Court should not, however, advise the litigant how to cure the defects. This type of advice "would undermine district judges' role as impartial decisionmakers." *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *see also Lopez*, 203 F.3d at 1131 n.13 (declining to decide whether the court was required to inform a litigant of deficiencies). Plaintiff's Complaint will be dismissed failure to state a claim, but because it may possibly be amended to state a claim, the Court will dismiss it with leave to amend.

## III.  Complaint

Plaintiff alleges three counts for threat to safety or failure to protect and use of excessive force. Plaintiff sues the Arizona Department of Corrections (ADC) Director Charles L. Ryan and the following current or former prison staff employed at the Florence Complex: Warden Lance R. Hetmer; Deputy Warden (DW) Greg Fizer; Criminal Investigator Kathy Ingulli; Assistant Chief of Security DW Barnes; Sergeants Blaine Moore and Unknown Quintero; Special Security Officers D. Gidcumb and L. Brass; and Corrections Officer II (CO II) Cisneros. Plaintiff seeks declaratory, compensatory, and punitive relief.

Plaintiff's claims primarily concern events that occurred after he was transferred to the Florence Complex, Central Unit, Cell Block 4 (CB4). Plaintiff alleges the following facts, which are summarized in chronological order: at some point, an incident occurred between Plaintiff and CO IIs Norris and Valentine and Plaintiff was charged with assaulting Norris and Valentine. On May 8, 2011, Plaintiff filed a grievance asserting that Norris and Valentine used excessive force against him and claiming that prison staff refused to document his resulting injuries. At a May 26, 2011 disciplinary hearing, DW Barnes found Plaintiff guilty of assaulting the officers. Plaintiff appealed contending that Barnes had failed to give the appropriate weight to Plaintiff's eye witnesses and that Barnes failed to consider medical evidence. Plaintiff does not indicate

the outcome of his appeal or allege whether or how he was sanctioned.

On June 13, 2011, while Plaintiff was housed in the Kasson Unit in the Florence Complex, Criminal Investigator Ingulli informed Plaintiff that he was being criminally investigated for assaulting Norris and Valentine. Plaintiff waived his Fifth Amendment right to remain silent and "invited" Ingulli to record his interrogation. Ingulli warned Plaintiff that if he lied to her, he would be disciplined via the prison's internal disciplinary system. Plaintiff responded that he had already been disciplined and that there was not much more that she could do to further discipline him. Ingulli warned Plaintiff that she would make sure that he was punished if he lied to her. Plaintiff took Ingulli's statement as a "potential" death threat, which he claims caused him to live in constant fear of being violently assaulted.

Plaintiff was later transferred to CB4 in the Central Unit. In CB4, ADC staff ordinarily formed a "make shift" line of officers posted along the route to outdoor recreation, rather than personally escorting each inmate outside. Under that system, approximately every 40 seconds, an inmate would be released from his cell to walk unescorted to recreation. To go outside, CB4 inmates had to descend a flight of stairs and walk through a dark basement where there was no video or audio surveillance and where other inmates were housed. Ordinarily, officers were posted at each end of the basement because of the risk of violence at those spots. When an inmate reached the basement door, which was adjacent to inmate cells, he had to turn sideways to go through the door outside. When recreation ended, inmates followed the reverse process in returning to their cells.

On September 7, 2011, Plaintiff went to recreation, apparently without incident. At 8:30 p.m., CB4 staff began returning inmates to their cells from recreation. In preparation for return to his cell, Plaintiff's hands were restrained behind his back. As he walked through the basement back towards his cell, Plaintiff noticed that neither Cisneros, nor any other officer, was posted at the usual spot in the basement. An inmate in one of the basement cells reached through his cell bars and grabbed Plaintiff's

1   handcuffs, pulling Plaintiff towards him.  Plaintiff dimly saw Cisneros about 30 yards
2   ahead with her back towards him, apparently ushering other inmates into their cells.  The
3   inmate who grabbed Plaintiff punched and stabbed him in the chest with a pen-like object
4   and Plaintiff screamed.[1]  As Plaintiff pulled away from the cell, his left hand came free
5   from his restraints.  As Plaintiff attempted to staunch the bleeding, he saw Cisneros
6   running towards him.  Plaintiff stumbled and fell to one knee somewhat away from his
7   attacker as Cisneros ordered him to lie down.  Plaintiff asserts that he complied with her
8   order, but that Cisneros pepper-sprayed him in the face.[2]  The pepper-spraying caused
9   Plaintiff's eyes, nose, chest, and lungs to burn and triggered asthma symptoms and
10  breathing difficulties.  By the time other staff arrived, Plaintiff was lying face down in a
11  prone position.  Plaintiff contends that Cisneros used excessive force by pepper spraying
12  him after he had been assaulted by another inmate and despite having complied with her
13  order.

14      Plaintiff was escorted to medical where he was found to have been stabbed once in
15  the upper left pectoral muscle.  Plaintiff was given a tetanus shot and breathing treatment
16  for his asthma.  He was cleared by medical staff and a nurse told him that a doctor would
17  examine him and provide pain medication in the morning.[3]

18      Plaintiff was then taken to a supervisor's office in the yard office, where Inmate
19  Thornburg, whom Cisneros had identified as the assaulting inmate, was being held.
20  Moore and Cisneros interrogated Plaintiff.  During the questioning, Plaintiff denied that
21  *he* had instigated the assault and maintained that he was the victim.  Cisneros conferred
22  with Moore concerning her report and asked Moore whether she should state that

---

[1] Plaintiff's allegations are somewhat ambiguous regarding whether he was punched and stabbed multiple times, or only punched multiple times and stabbed once.

[2] Plaintiff denies that Cisneros issued multiple orders and contends that he complied with her order.

[3] Plaintiff did not see a doctor until about 20 days later.  Plaintiff asserts the doctor was upset because Plaintiff's mother had called a Facility Health Administrator (FHA) complaining about the lack of treatment for a "visable infection."  Plaintiff alleges no facts to support that he suffered any aftereffects from the assault or pepper-spraying or that he sought further treatment prior to seeing a doctor about 20 days after the incident.

Plaintiff had thrown punches. Moore told her to say that she saw Plaintiff standing in front of Thornburg's cell and that Thornburg and Plaintiff were both throwing punches at one another. When DW Fizer called, Moore told Fizer that no weapon had been found in Thornburg's cell. Moore also told Fizer that Cisneros had not witnessed the stabbing, but that disciplinary charges were going to be issued. Cisneros charged Plaintiff with fighting and placed him in an isolation cell in CB3.[4]

The next morning at 6:15 a.m., Special Security Officers Gidcumb and Brass, and Sergeant Quintero interrogated Plaintiff about the incident and asked, "how the hell did swing shift officers get it so messed up that they would implicate Inmate Thornburg #229524 . . . as the assailant[?]" (Doc. 1 at 3G.) Quintero told Plaintiff that he knew that Plaintiff had run up to cell 4A20 in which Inmate Garcia was housed, rather than cell 4A21 in which Thornburg was held, and that Plaintiff had begun throwing punches at Garcia. Plaintiff told Quintero that his left wrist restraint had come loose when he was attacked and denied that he had assaulted anyone. Quintero noted Plaintiff's long history of protective segregation issues, including attacks by other inmates, and Plaintiff's name having appeared on a Mexican Mafia "targeted kill list". Plaintiff responded that he had never been told that his name was on such a list and demanded protection from future assaults.

Gidcumb then asked Plaintiff if he knew Garcia, who had recently moved into the CB4A run in the basement. According to Plaintiff, Gidcumb alluded to Garcia as controlling the cellblock for another inmate affiliated with the Mexican Mafia and that Mexican Mafia would not "approve" Plaintiff's return to CB4. Plaintiff denied knowing Garcia. Quintero told Plaintiff that the report indicated that Plaintiff had run up to cell 4A20 and had thrown punches at Garcia for "personal disrespect issues." (*Id.* at 3H.) Plaintiff again denied having assaulted anyone and denied knowing Garcia. Brass then

---

[4] Plaintiff contends that Cisneros was not at her assigned post and fabricated a story to justify her use of force against him. He contends that but for her abandonment of her assigned post, and Defendants' inadequate staffing and procedures concerning maximum security inmates, he would not have been assaulted.

- 6 -

told Plaintiff that Garcia had confessed to stabbing Plaintiff. At the conclusion of the interrogation, Plaintiff was placed in CB7 and issued a disciplinary ticket for fighting Garcia.[5]

On September 21, 2011, Plaintiff submitted an Inmate Letter to DW Fizer seeking an investigation into staff misconduct and a criminal investigation into the stabbing incident. On October 26, 2011, Fizer denied Plaintiff's request.

At Plaintiff's disciplinary hearing on November 15, 2011, Plaintiff called eight witnesses. Plaintiff denied "slip[ping] his cuffs" or assaulting anyone. Plaintiff was found guilty, but does not allege how he was sanctioned. Plaintiff appealed the same day. On December 7, 2011, DW Barnes dismissed the disciplinary charge after concluding that documentation did not support that Plaintiff had been the aggressor or had initiated the attack.

Plaintiff contends that Defendants knew or should have known that the basement area was dangerous, understaffed, outdated and posed a threat to inmates and staff. He asserts, on "personal knowledge and belief," that Ryan, Hetmer, Fizer, Ingulli, Barnes, Moore, Quintero, Gidcumb, Brass, and Cisneros abused their authority by "playing" Plaintiff off against "known enemies by manipulating inmate placement housing." (Doc. 1 at 3A, 7.) Plaintiff contends that Defendants knew before moving him to the CB4 that his name was on a "targeted prison kill list" but housed him on the same tier with "known enemies." (*Id.* at 3B.) Plaintiff does not identify who those "known" enemies were or allege facts to support that either Plaintiff, or any of the Defendants, knew or should have known that Garcia posed a threat to Plaintiff.

In Count II, Plaintiff asserts that while Ryan, Hetmer, Fizer. Barnes, Moore, and Quintero were not directly involved in the September 7 incident, they acted with deliberate indifference towards a substantial risk of serious injury to him. That is,

---

[5] Plaintiff contends that Ryan, Hetmer, Fizer, Barnes, Moore, Quintero, Gidcumb, Brass, and Cisneros implemented a custom of not informing Plaintiff of death threats against him.

Plaintiff asserts that they knew of a substantial threat to his safety but failed to act to protect him. In particular, he contends that the above Defendants were deliberately indifferent by housing him in General Population (GP) despite knowing that he was on a Mexican Mafia "targeted 'kill list'" and he contends that they employed a makeshift recreation line with insufficient staff that allowed

> supermaximum inmates to be violently assaulted undetected, continue to implement a practice of conducting recreational services by and through the basement "potential death trap" door under extreme inadequate lighting at night time with no audio or visual surveillance, lack of cell searches to recover prison made shanks, lax discipline, investigations, supervision, fabrication or use of force and disciplinary reports, failure to advise inmates of reasonable known death threats, [and] overcrowding.

(Doc. 1 at 4B.)

Plaintiff contends that Quintero's statement that Plaintiff had a long history of protective segregation issues and of previous attacks on him shows that the above Defendants acquiesced in a deficient policy concerning the safety of inmates. Plaintiff contends that Quintero's statement supports an inference that the above Defendants knew that Plaintiff should be separated from GP inmates, but that he was placed in GP where he could be stabbed "multiple times" by an inmate with known ties to the prison gang that had targeted Plaintiff. (*Id.* at 4C.) Plaintiff also contends that the above Defendants are liable where Cisneros pepper-sprayed Plaintiff, rather than assist him, after he was stabbed, and then attempted to cover-up her actions in her reports.

**IV.     Failure to State a Claim**

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an

affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

### A. Threat to Safety

Plaintiff designates Counts I and II as claims for threat to safety or failure to protect. A claim for threat to safety arises under the Fourteenth Amendment as to pretrial detainees and under the Eighth Amendment as to convicted inmates, but the standard is the same. To state a claim under § 1983 for threats to safety, an inmate must allege facts to support that he was incarcerated under conditions posing a substantial risk of harm and that officials were "deliberately indifferent" to those risks. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). To adequately allege deliberate indifference, a plaintiff must allege facts to support that a defendant knew of, but disregarded, an excessive risk to inmate safety. *Id.* at 837. That is, "the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference." *Id.*

Plaintiff does not allege facts to support that any of the Defendants knew, or should have known, prior to the September 7 assault, that Garcia posed a *substantial* threat to Plaintiff.[6] Indeed, Plaintiff denied knowing Garcia. While Plaintiff alleges that Gidcumb referred to Plaintiff being on a targeted kill list of the Mexican Mafia, Plaintiff does not allege facts to support that any of those Defendants knew, or should have known, that he was a target prior to the September 7 assault or that they knew or had reason to know that Garcia was affiliated with the Mexican Mafia prior to September 7. Instead, Plaintiff's allegations reflect that Garcia admitted to prison officials after the

---

[6] Plaintiff's assertion that Ingulli's statement that he would be punished if he lied to her after he stated that he had already been disciplined is not sufficient to support that Ingulli, or anyone else, posed a substantial threat to his safety. Verbal threats or abuse, absent more, do not rise to the level of a constitutional violation. *Somers v. Thurman*, 109 F.3d 614, 624 (9th Cir.1997); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987)). Plaintiff otherwise to allege any facts to support that Ingulli was in any way involved with his transfer to CB4 or had any reason to know or believe that Garcia posed a threat to Plaintiff, much less that she engineered such placement.

1  incident that he (Garcia) had attacked Plaintiff and informed prison staff that Plaintiff
2  was a target and would not be "approved." The mere fact that Plaintiff had previously
3  been assaulted or had protective segregation issues is not sufficient to support that any of
4  the Defendants knew or should have known that Garcia posed a substantial threat to
5  Plaintiff's safety. Plaintiff also fails to allege facts to support that the lack of
6  surveillance, poor lighting, or inadequate staffing posed a substantial threat to his safety
7  where Plaintiff does not allege facts to support that assaults regularly or repeatedly
8  occurred in that portion of the cellblock or facts to support that any Defendant knew, or
9  should have known of such risks. Because Plaintiff fails to allege facts to support that
10 any Defendant acted with deliberate indifference towards his safety and Counts I and II,
11 these counts will be dismissed for failure to state a claim.

### B. Excessive Force

13 Plaintiff designates Count III as a claim for excessive force against Cisneros. The
14 Fourth Amendment applies to excessive force claims by pretrial detainees, *see Lolli v.*
15 *County of Orange*, 351 F.3d 410, 415 (9th Cir. 2003), while the Eighth Amendment
16 applies to excessive force claims of convicted inmates, *see Hudson v. McMillian*, 503
17 U.S. 1, 7 (1992); *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). Under both, force
18 may not be used maliciously and sadistically for the purpose of causing harm. *Hudson*,
19 503 U.S. at 7; *Watts v. McKinney*, 394 F.3d 710, 711 (9th Cir. 2005). The question is
20 whether an officer's actions were objectively reasonable in light of the facts and
21 circumstances confronting him, without regard to underlying intent or motivation. *Lolli*,
22 351 F.3d at 415 (citing *Graham*, 490 U.S. at 397). The Court must balance the nature
23 and quality of the intrusion against the countervailing governmental interests. *Id.*

24 In this case, Plaintiff alleges that when he was attacked, Cisneros had her back to
25 him, but came running after Plaintiff screamed. Plaintiff acknowledges that one of his
26 hands came loose and that he was attempting to repel the attack. While Plaintiff alleges
27 that he complied with Cisneros's order to get down, his other allegations support that
28 Cisneros's use of pepper spray under the circumstances was objectively unreasonable

where two inmates appeared to be throwing punches and one of Plaintiff's restraints had come off. Accordingly, Plaintiff fails to state a claim for use of excessive force.

## V.     Leave to Amend

For the foregoing reasons, Plaintiff's Complaint will be dismissed for failure to state a claim upon which relief may be granted. Within 30 days, Plaintiff may submit a first amended complaint to cure the deficiencies outlined above. The Clerk of Court will mail Plaintiff a court-approved form to use for filing a first amended complaint. If Plaintiff fails to use the court-approved form, the Court may strike the amended complaint and dismiss this action without further notice to Plaintiff.

Plaintiff must clearly designate on the face of the document that it is the "First Amended Complaint." The first amended complaint must be retyped or rewritten in its entirety on the court-approved form and may not incorporate any part of the original Complaint by reference. Plaintiff may include only one claim per count.

A first amended complaint supersedes the original complaint. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990). After amendment, the Court will treat an original complaint as nonexistent. *Ferdik*, 963 F.2d at 1262. Any cause of action that was raised in the original complaint and that was voluntarily dismissed or was dismissed without prejudice is waived if it is not alleged in a first amended complaint. *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).

## VI.    Plaintiff's Motions

As noted above, Plaintiff has filed a motion for recusal of Magistrate Judge Aspey and a motion for appointment of counsel. These motions will be denied.

### A.     Recusal

The Court considers whether recusal in this matter is appropriate under 28 U.S.C. § 455. Section 455(a) provides that a United States judge or magistrate judge "shall disqualify" himself in any proceeding in which his "impartiality might reasonably be questioned." Section 455(b)(1) provides that a judge must also disqualify himself, where

1   he "has a personal bias or prejudice concerning a party, or personal knowledge of
2   disputed evidentiary facts concerning the proceeding[.]"  Recusal pursuant to § 455(b) is
3   required only if the bias or prejudice stems from an extra-judicial source, not from
4   conduct or rulings during the course of the proceedings.  *See Hasbrouck v. Texaco, Inc.*,
5   842 F.2d 1034, 1046 (9th Cir. 1987), *aff'd*, 496 U.S. 543 (1990); *United States v. Studley*,
6   783 F.2d 934, 939 (9th Cir. 1986) (judge's prior adverse rulings are insufficient cause for
7   recusal).  "[J]udicial rulings alone almost never constitute [a] valid basis for a bias or
8   partiality motion."  *Liteky v. United States*, 510 U.S. 540, 555 (1994).  Adverse rulings
9   should be appealed; they do not form the basis for a recusal motion.  Further, where the
10  judge forms opinions in the courtroom, either in the current proceeding or in a prior
11  proceeding, these opinions "do not constitute a basis for a bias or partiality motion unless
12  they display a deep-seated favoritism or antagonism that would make fair judgment
13  impossible."  *Id.*

14  Plaintiff fails to allege or show any basis for recusal under § 455.  Rather, he
15  complains of the Court's rulings in previous cases filed by him.[7]  As discussed above,
16  adverse rulings are not a basis upon which the Court's impartiality might *reasonably* be
17  questioned for purposes of § 455(a).  The Court does not have a personal bias or
18  prejudice concerning Plaintiff or other potential parties to this action or personal
19  knowledge of disputed evidentiary facts at issue in this proceeding.  For these reasons,
20  the Court will deny Plaintiff's motion for recusal.

21  **B.    Appointment of Counsel**

22  Plaintiff also seeks the appointment of counsel due to limitations on access to legal
23  resources for inmates.  There is no constitutional right to the appointment of counsel in a
24  civil case.  *See Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 269 (9th Cir.

---

[7] At this juncture, this Court has not yet referred pretrial matters to Magistrate Judge Aspey and will not do so unless or until Plaintiff files an amended complaint that states a claim against one or more properly named defendants.  If and when pretrial matters in this case are referred to Magistrate Judge Aspey, Plaintiff may file an objection if he disagrees with a ruling by Magistrate Judge Aspey under Rule 72(a) of the Federal Rules of Civil Procedure.

1982). In proceedings *in forma pauperis*, the court may request an attorney to represent any person unable to afford one. 28 U.S.C. § 1915(e)(1). Appointment of counsel under 28 U.S.C. § 1915(e)(1) is required only when "exceptional circumstances" are present. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). A determination with respect to exceptional circumstances requires an evaluation of the likelihood of success on the merits as well as the ability of Plaintiff to articulate his claims *pro se* in light of the complexity of the legal issue involved. *Id.* "Neither of these factors is dispositive and both must be viewed together before reaching a decision." *Id.* (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)).

Having considered both elements, it does not appear at this time that exceptional circumstances are present that require the appointment of counsel in this case. Plaintiff is in no different position than many *pro se* prisoner litigants. Moreover, the Complaint is replete with voluminous citations to case law. The Court will deny without prejudice Plaintiff's motion for appointment of counsel.

**VII. Warnings**

**A.    Release**

Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release. Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay the balance or (2) show good cause, in writing, why he cannot. Failure to comply may result in dismissal of this action.

**B.    Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

**C.    Copies**

Because Plaintiff is currently confined in ASPC-Eyman and this case is subject to General Order 13-11, Plaintiff is not required to submit an additional copy of every filing

1  for use by the Court, as would ordinarily be required by Local Rule of Civil Procedure
2  5.4. If Plaintiff is transferred to a prison other than ASPC-Eyman, he will be notified of
3  the requirements regarding copies for the Court that are required for inmates whose cases
4  are not subject to General Order 13-11.

### D.     Possible "Strike"

Because the Complaint has been dismissed for failure to state a claim, if Plaintiff fails to file an amended complaint correcting the deficiencies identified in this Order, the dismissal may count as a "strike" under the "3-strikes" provision of 28 U.S.C. § 1915(g). Under the 3-strikes provision, a prisoner may not bring a civil action or appeal a civil judgment *in forma pauperis* under 28 U.S.C. § 1915 "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

### E.     Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik*, 963 F.2d at 1260-61 (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     Plaintiff's Application to Proceed *In Forma Pauperis* (Doc. 2) is **granted**.

(2)     As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is not assessed an initial partial filing fee.

(3)     The Complaint (Doc. 1) is **dismissed** for failure to state a claim. Plaintiff has **30 days** from the date this Order is filed to file a first amended complaint in compliance with this Order.

(4)     If Plaintiff fails to file an amended complaint within 30 days, the Clerk of

1  Court must, without further notice, enter a judgment of dismissal of this action with
2  prejudice that states that the dismissal may count as a "strike" under 28 U.S.C. § 1915(g).
3      (5) The Clerk of Court must mail Plaintiff a court-approved form for filing a
4  civil rights complaint by a prisoner.
5      (6) Plaintiff's motion for recusal and for appointment of counsel are **denied**.
6  (Doc. 7, 8.)
7      DATED this 24th day of March, 2014.

```
                                    Robert C. Broomfield
                                    Senior United States District Judge
```

**Instructions for Prisoners Applying for Leave to Proceed** *in Forma Pauperis*
**Pursuant to 28 U.S.C. § 1915 in a Civil Action (Non-habeas) in Federal Court**

You must pay the $350.00 filing fee plus the $50.00 administrative fees for a civil action. If you later file an appeal, you will be obligated to pay the $455.00 filing fee for the appeal.

If you have enough money to pay the full $400.00 filing and administrative fees, you should send a cashier's check or money order payable to the Clerk of the Court with your complaint.

If you do not have enough money to pay the full $400.00 filing and administrative fees, you can file the action without prepaying the fees. However, the court will assess an initial partial filing fee. The initial partial filing fee will be the greater of 20% of the average monthly deposits or 20% of the average monthly balance in your prison or jail account for the six months immediately preceding the filing of the lawsuit. The court will order the agency that has custody of you to withdraw the initial partial filing fee from your prison or jail account as soon as funds are available and to forward the money to the court.

After the initial partial filing fee has been paid, you will owe the balance of the $350.00 filing fee (you will not be required to pay the $50.00 administrative fee). Until the filing fee is paid in full, each month you will owe 20% of your preceding month's income. The agency that holds you in custody will collect that money and forward it to the court any time the amount in your account exceeds $10.00. The balance of the filing fee may be collected even if the action is later dismissed, summary judgment is granted against you, or you fail to prevail at trial.

To file an action without prepaying the filing fee, and to proceed with an action *in forma pauperis*, you must complete the attached form and return it to the court with your complaint. You must have a prison or jail official complete the certificate on the bottom of the form and attach a certified copy of your prison or jail account statement for the last six months. If you were incarcerated in a different institution during any part of the past six months, you must attach a certificate and a certified copy of your account statement from each institution at which you were confined. If you submit an incomplete form or do not submit a prison or jail account statement with the form, your request to proceed *in forma pauperis* will be denied.

Even if some or all of the filing fee has been paid, the court is required to dismiss your action if: (1) your allegation of poverty is untrue; (2) the action is frivolous or malicious; (3) your complaint does not state a claim upon which relief can be granted; or (4) your complaint makes a claim against a defendant for money damages and that defendant is immune from liability for money damages.

If you file more than three actions or appeals which are dismissed as frivolous or malicious or for failure to state a claim on which relief can be granted, you will be prohibited from filing any other action *in forma pauperis* unless you are in imminent danger of serious physical injury.

Revised 5/1/2013

_____
Name and Prisoner/Booking Number

_____
Place of Confinement

_____
Mailing Address

_____
City, State, Zip Code

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

_____,           )
                                               ) CASE NO. _____
                        Plaintiff,             )
                                               )
            vs.                                )           APPLICATION TO PROCEED
                                               )           *IN FORMA PAUPERIS*
_____,           )              BY A PRISONER
                        Defendant(s).          )           CIVIL (NON-HABEAS)
                                               )

    I, _____, declare, in support of my request to proceed in the above entitled case without prepayment of fees under 28 U.S.C. § 1915, that I am unable to pay the fees for these proceedings or to give security therefor and that I believe I am entitled to relief.

    In support of this application, I answer the following questions under penalty of perjury:

1.  Have you ever before brought an action or appeal in a federal court while you were incarcerated or detained?
    ☐Yes   ☐No    If "Yes," how many have you filed? _____.
    Were any of the actions or appeals dismissed because they were frivolous, malicious, or failed to state a claim upon which relief may be granted? ☐Yes   ☐No    If "Yes," how many of them? _____.

2.  Are you currently employed at the institution where you are confined?        ☐Yes    ☐No
    If "Yes," state the amount of your pay and where you work. _____
    _____

3.  Do you receive any other payments from the institution where you are confined?    ☐Yes    ☐No
    If "Yes," state the source and amount of the payments. _____
    _____

4.  Do you have any other sources of income, savings, or assets either inside or outside of the institution where you are confined? ☐Yes ☐No
    If "Yes," state the sources and amounts of the income, savings, or assets. _____

I declare under penalty of perjury that the above information is true and correct.

_____           _____
DATE                                  SIGNATURE OF APPLICANT

### CONSENT TO COLLECTION OF FEES FROM TRUST ACCOUNT

I, _____, hereby consent to having the designated correctional officials at this institution release to the Court my trust account information. I further consent to having the designated correctional officials at this institution withdraw from my trust account the funds required to comply with the order of this Court for the payment of filing fees in accordance with 28 U.S.C. § 1915(b).

My consent includes withdrawal from my account by correctional officials of partial initial payments to this Court equal to 20% of the greater of:

(A) the average monthly deposits to my account for the six-month period preceding my filing of this action, or

(B) the average monthly balance in my account for the six-month period preceding my filing of this action.

My consent also includes monthly withdrawals from my account by correctional officials of an amount equal to 20% of each month's income. Whenever the amount in my account reaches $10.00, correctional officials will withdraw that amount and forward it to the Court until the required filing fee is paid in full. I understand that I am liable for paying the entire fee, even if my case is dismissed by the Court before the fee is fully paid.

_____           _____
DATE                                  SIGNATURE OF APPLICANT

### CERTIFICATE OF CORRECTIONAL OFFICIAL
### AS TO STATUS OF APPLICANT'S TRUST ACCOUNT

I, _____, certify that as of the date applicant signed this application:
    (Printed name of official)

The applicant's trust account balance at this institution is: $_____
The applicant's average monthly deposits during the prior six months is: $_____
The applicant's average monthly balance during the prior six months is: $_____
The attached certified account statement accurately reflects the status of the applicant's account.

_____
DATE    AUTHORIZED SIGNATURE      TITLE/ID NUMBER           INSTITUTION